## IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
## IN AND FOR OSCEOLA COUNTY, FLORIDA

CASE NO.:

CIO7mP1131

IVETTE ZAYAS,

       Plaintiff,

vs.

OSCEOLA MENTAL HEALTH, INC.
d/b/a PARK PLACE BEHAVIORAL
HEALTHCARE; DR. BARBARA BURTNER;
THE CITY OF KISSIMMEE; THE KISSIMMEE
POLICE DEPARTMENT; OFFICER RANDY S.
ANTHONY; OFFICER VINCENT A. PEDULLA;
OFFICER PETER GAVLICK;

       Defendants.

_____/

### FIRST AMENDED COMPLAINT

      COMES NOW, the Plaintiff, IVETTE ZAYAS, by and through her

undersigned attorney and sues the Defendants, OSCEOLA MENTAL HEALTH,

INC. d/b/a PARK PLACE BEHAVIORAL HEALTH CARE, (hereinafter "Park

Place") a Florida corporation, DOCTOR BARBARA BURTNER (hereinafter "Dr.

Burtner") THE CITY OF KISSIMMEE (hereinafter "City of Kissimmee"), THE

KISSIMMEE POLICE DEPARTMENT (hereinafter "Kissimmee Police"),

OFFICER RANDY S. ANTHONY (hereinafter "Officer Anthony'), OFFICER

VINCENT A. PEDULLA (hereinafter "Officer Pedulla), OFFICER PETER

GAVLICK,(hereinafter, "Officer Gavlick") jointly and severally, and as grounds

therefore would state as follows:

1

## JURISDICTION AND PARTIES

1. This is an action for damages in excess of $15,000.00, exclusive of interest, costs and attorneys' fees.

2. This claim is brought pursuant to Florida Statutes Chapters 766, 768, and 394, Florida Rules of Civil Procedure 1.650; The common law of Florida; The United States Constitution, and in particular, the 4th and 14th Amendments and Title 42 United States Code Sections 1983 and 1985.

3. All conditions precedent to the filing of this lawsuit have been complied with, prior to the filing of this complaint including those set out in Florida Statutes 766 and 768.28.

4. An extension of the applicable Statute of Limitations pursuant to Florida Statute 766.104(2) was filed on August 18, 2006 and docketed by the appropriate court. (Copy attached)

5. All relevant notice provisions of Florida Statute 766 and 768.28 have been complied with prior to the filing of this lawsuit.

6. The undersigned counsel hereby certifies that a reasonable investigation has been made in accordance with this action that gives rise to a good faith belief that grounds exist for the filing of this action against each of the named defendants herein directly and by and through their employees, agents, apparent agents, servants, volunteers, owners and/or directors.

2

7. At all times material hereto, Plaintiff, Ivette Zayas was a resident of Osceola County, Florida.

8. At all times material hereto, Defendant, Park Place, was and is a corporation organized and existing under the laws of the State of Florida and authorized, pursuant to the laws of the State of Florida to do business in Osceola County, Florida and conducting its daily business within that county.

9. At all times material hereto, Defendant, Park Place, held itself out to the public as a provider of medical and mental health care and services on both an in-patient and out-patient basis and having the authority, employees, competent staff, contractors and trained personnel to provide appropriate evaluations, medical and mental health care and services, nursing care, out-patient and in-patient care to patients such as Ivette Zayas, suffering from the conditions with which she presented to Park Place on October 17, 2004 and further held itself out as a facility bound to protect patient's rights as provided for by Florida Statutes Chapter 394.

10. At all times material hereto Defendant, Park Place held itself out to the public as a facility that had created and enforced appropriate policies and procedures for its employees, agents, apparent agents, contractors, servants, volunteers, officers, owners and directors, having properly educated, trained and supervised these individuals and having appropriately selected these individuals such that they were competent

3

to provide medical and mental health care and services on both an in-

patient and out-patient basis to patients such as Plaintiff, Ivette Zayas

presenting with the conditions with which Plaintiff, Ivette Zayas

presented to Park Place on October 17, 2004.

11. Defendant, Park Place directly and by and through its employees,

agents, apparent agents, contractors, servants, volunteers, directors

and owners had a duty to render medical and mental health care and

services to Ivette Zayas in accordance with acceptable standards of

care for such a provider in this and similar medical and mental health

communities as required by the laws of the State of Florida and to

protect her rights as provided for by Florida Statute 394.

12. At all times material hereto, Defendant, Park Place, was directly liable

for its own negligent acts and omissions and was vicariously liable for

the negligent acts and omissions of its agents, apparent agents,

contractors, employees, volunteers, owners and/or directors, acting

within the course and scope of such relationship and in furtherance of

Park Place's business pursuits.

13. The agents, apparent agents, servants, contractors, employees and

volunteers of the Defendant, Park Place, include but are not limited to,

Dr. Barbara Burtner (hereinafter, "Dr. Burtner"), Rehm Evans

(hereinafter, "Mr. Evans") Marsha Snyder, R.N.(hereinafter, "Nurse

Snyder") and Mary Ellen Kronberg, ARNP ("hereinafter nurse

practitioner Kronberg")

4

14. At all times material hereto, Defendant, Park Place held out to the public, either directly and/or constructively that it employed psychiatric physicians, including, but not limited to Dr. Burtner, either on the premises or on call to the premises who were well qualified to render medical and mental health care and services to those individuals who came to Park Place seeking such services, as did Ivette Zayas on October 17, 2004 and did so in such a manner that any patient, as did Ivette Zayas, coming to the facility would rely on said representation in making the decision to come to the facility for assistance.

15. At all times material hereto and in particular on October 17, 2004, Ivette Zayas did believe and rely upon Park Place's holding out of its psychiatric physicians including, but not limited to, Dr. Burtner, as its employees and well capable of providing medical and mental health care services to her. As a result of that reliance, she did change her position in that she accepted medical care and mental health services at that facility.

16. At all times material hereto Park Place had a non-delegable duty to provide medical and psychiatric care and services on an in-patient and out-patient basis to patients such as Ivette Zayas in a non negligent manner and in a manner that protected their rights under Florida Statute 394. In so doing, although it might contract out the acts to be performed it could not avoid the responsibility for those acts. As a

result Park Place, pursuant to the laws of Florida and the contracts with its individual patients, was and is responsible for the acts of its employees, agents, apparent agents, contractors, servants, volunteers, officers and directors, including, but not limited to Dr. Burtner, Mr. Evans, Nurse Snyder, and Nurse Practitioner Kronberg when they rendered care and attention to Ivette Zayas.

17. .At all times material hereto, Dr. Burtner was and is a physician licensed under the laws of the state of Florida and transacting business in Osceola County, Florida. Dr. Burtner held herself out to the public as a physician qualified in the specialty of psychiatry and further held herself out as a specialist possessing the same level of skill and expertise in the field specialty as any other qualified psychiatrist in Osceola County, Florida, or any other similar medical community.

18. At all times material hereto, Dr. Burtner was either employed by and/or had contracted with Park Place to perform psychiatric services on both in-patient, out-patient and on call basis. As such it was her duty to accept on call contact in the evening hours to provide psychiatric services as required in accordance with the acceptable standards of care for psychiatrists in Osceola County, Florida, or any other similar medical community under the same or similar circumstances.

19. At all times material hereto, Mr. Evans was employed by Park Place as an assessor, for in patients and outpatients, and was held out by

6

Park Place, as well as himself, to the public, as possessing the ability to competently assess the medical and mental health condition of individuals such as Ivette Zayas, determine their needs, make appropriate decisions and seek appropriate assistance, and further, as possessing the same level of skill and expertise as any other qualified assessor in Osceola County, Florida or any other medical or mental health community when presented with a patient such as Ivette Zayas, suffering from conditions with which Ivette Zayas suffered on October 17, 2004. As a result, Park Place pursuant to the laws of Florida, and the contracts with this patient was responsible for the acts of Mr. Evans.

20. At all times material hereto, Marsha Snyder, R.N., was employed by Defendant, Park Place to render nursing care to patients of Park Place whether on an in-patient or out-patient basis and was licensed under the laws of the State of Florida, as a nurse and doing business in Osceola County, Florida and was held out by Park Place, as well as herself, as possessing the same level of skill and expertise as any other qualified nurse in Osceola County, Florida or any other medical or mental health community when presented with a patient such as Ivette Zayas, suffering from conditions with which Ivette Zayas suffered on October 17, 2004. As a result, Park Place, pursuant to the Laws of Florida and the contract with this patient was and is responsible for the acts of Nurse Snyder.

7

21. At all times material hereto, Nurse Practitioner Kronberg, was employed by the Defendant, Park Place to render advanced registered nurse practitioner care to patients of Defendant, Park Place whether on an in-patient or out-patient basis and was licensed under the State of Florida, as an advanced Nurse Practitioner and doing business in Osceola County, Florida and was held out by Park Place, as well as herself, as possessing the same level of skill and expertise as any other qualified advanced registered nurse practitioner in Osceola County, Florida or any other medical or mental health community when presented with a patient such as Ivette Zayas, suffering from conditions with which Ivette Zayas suffered between 2001 and 2004. As a result, Park Place is responsible pursuant to the Laws of Florida and the contract with this patient for the acts of Nurse Practitioner Kronberg.

22. At all times material hereto, The City of Kissimmee was and is a municipality of the state of Florida and at all times material hereto did retain, constitute, train, operate, and manage the Kissimmee police department and all of its employees.

23. At all times material hereto Officer Anthony was and is a police officer, with the Kissimmee Police Department employed by the City of Kissimmee.

24. At all times material hereto, Officer Pedulla was and is a police officer with the Kissimmee Police Department, employed by the City of Kissimmee.

25. At all times material hereto, officer Gavlick was and is a police officer with the Kissimmee Police Department, employed by the City of Kissimmee.

26. Venue of this action is proper in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida, in that all acts material to this matter, occurred in Osceola County, Florida, and the defendants upon information and belief are located in Osceola County Florida.

27. Jurisdiction over this matter is conferred in the circuit court in and for Osceola County, Florida by Article 5, Section 5 of the Florida Constitution.

## FACTS GIVING RISE TO THE CLAIM

28. Plaintiff, Ivette Zayas was a thirty-seven year old woman who suffered from bipolar disease and depression. Through her own efforts and those of others, her medical and mental condition was maintained under good control such that she was a fully functional adult, living independently and raising a daughter.

29. Beginning in 2001, Ivette Zayas sought medical and mental health care and services from the Defendant, Park Place. While an out-patient at Park Place, she established a working relationship with nurse practitioner Kronberg, employed by Defendant, Park Place. Pursuant

to that relationship she was prescribed a number of medications,

including Seroquel, by Nurse Practitioner Kronberg.

30. On or about October 8, 2004, Nurse Practitioner Kronberg

significantly increased Ms. Zayas' Seroquel while continuing her other

medications. She told Mrs. Zayas that if she ever had a reaction to the

medication she had prescribed, she could return to the Park Place, day

or night and they would call her.

31. On the evening of October 17, 2004, while at a Denny's Restaurant,

Ms. Zayas took her increased dosage of Seroquel, as prescribed by

Nurse Practitioner Kronberg. Shortly after taking the medication, Ms.

Zayas noticed that she was developing tremors and/or shaking and/or

an otherwise uncomfortable feeling.  She believed at that time that she

was having a reaction to the medication that she was taking, that had

been prescribed at Park Place.  A friend took her immediately to the

emergency room at Florida Hospital Kissimmee.  However, because of

the extended wait she went immediately as instructed by Nurse

Practitioner Kronberg, to nearby Park Place to be seen as an

outpatient.

32. Ms. Zayas elected to go to Park Place because she had been instructed

to do so, she believed that she was well known there, her medical

information was there, and she would be able to obtain the medical

and mental health services of a physician and/or Nurse Practitioner

Kronberg who would be competent in that it would be someone

10

employed by and held out by Defendant, Park Place as well able to
provide her with medical and mental health care and services as an
outpatient.

33. When she arrived at Park Place she was greeted by an assessor named
Rehm Evans, who was employed by Park Place. Mr. Evans and Ms.
Zayas had not previously met nor was Mr. Evans, familiar in any
respect with Ms. Zayas' prior care, nor did he adequately review her
records. During that meeting Ms. Zayas' indicated that she believed
that she was having a reaction to her medication and wanted to speak
with a physician. At that time there was no physician in house,
although there were both psychiatrists and psychologists on call to the
facility. These individuals were well capable of coming to the facility
if the need arose, as was their duty. Unfortunately without a physician
on staff the facility was not capable of handling a possible severe
medical condition such as a reaction to medication.

34. After speaking with Ms. Zayas briefly, Mr. Evans told Mrs. Zayas to
wait in a small room and went to speak with a registered nurse in the
crisis stabilization unit. That nurse, Marsha Snyder, elected to call the
on-call psychiatrist, Dr. Burtner. Dr. Burtner had no prior working
relationship or knowledge of Ms. Zayas' case. Without knowing her
prior medical condition, the medications she had previously been on,
the increases in those medications and the fact that Ms. Zayas was
now complaining to the intake assessor and nurse of a reaction to

11

medication, Dr. Burtner prescribed medication to be given by injection to Ms. Zayas. Dr. Burtner did not ask to be called back with any further information once the injections had been given.

35. Nurse Snyder armed with Dr. Burtner's orders approached Ms. Zayas in the room with two needles. Ms. Zayas stated emphatically that she did not wish to take the injection, in that she believed that she was currently having a reaction to medication and was concerned that this might hurt her. In spite of that Nurse Snyder insisted that the injection would have to be taken. At this time, Ms. Zayas was not Baker Acted, nor was she an admitted patient. She was there solely on a voluntary basis as an out-patient seeking the medical services of a physician. Nonetheless, Nurse Snyder and Mr. Evans both insisted that she take the injection and effectively blocked her from leaving the facility. They further, through words and actions left the clear understanding with Ivette Zayas that if she did not submit, they would force her to comply. When Ms. Zayas again refused, Nurse Snyder and Mr. Evans then stated that if she did not take the injection they would call the police, leaving her with the clear impression that they would force her to take the injection. At that point, Mr. Evans did phone 911 to ask police to come to the facility.

36. A short time after the call was made; three male officers arrived at Park Place. These officers were with the Kissimmee Police Department and were officers, Anthony, Pedulla and Gavlick. At the

time they arrived, and at all times thereafter, Mrs. Zayas had not been baker acted, involuntary committed, nor was she in an emergent or life-threatening condition. She was competent and clearly able to make decisions of a medical nature on her own behalf. The officers either knew and/or should have known, as would any reasonable person, that Mrs. Zayas had the right to refuse medical care and attention as a competent adult under the circumstances.

37. When the officers arrived, they found Mrs. Zayas in a small room where she had been directed to remain. She informed the officers that she did not wish to take the medication that was being forced upon her by Park Place. Rather, she wished to leave the facility in the company of her friend, who was with her at the time. She was fully competent, not violent, nor was she a danger to herself or any other person

38. In spite of the fact that the officers knew and/or should have known that they were violating Mrs. Zayas' constitutional and civil rights, to refuse medical care, they insisted that she submit to the injections. At that point Mrs. Zayas became upset, began crying and attempted to tell the officers that she was afraid that she was suffering from a medication reaction and that if she took additional medication, she would be hurt. The officers refused to listen, and instead forcefully grabbed her and utilized arm locks and various other painful maneuvers to force her to the ground and held her there. She continued to cry out that she did not want the medicine. Rather than

13

calm Mrs. Zayas and refrain from injecting her, the officers forced her to submit to their will by having Officer Anthony taser Mrs. Zayas in or about her abdomen. She screamed in agony while being held under the weight of the officers on the floor. Officer Anthony then tasered her one or more additional times causing excruciating pain. While still holding her, they pulled down her pants, and allowed Nurse Snyder to re-enter the room and forcibly give her two injections in her buttocks against her will.

39. Shortly after this incident, a female police officer arrived from the Kissimmee Police Department and inquired as to what had just occurred. She then directed the other three male officers to leave the scene.

40. Mrs. Zayas was in agony and complaining of chest pain. The employees of Park Place at this point, finally did what they should have done all along and arranged for transportation for Mrs. Zayas to the emergency room at Florida Hospital Kissimmee. Several days later, she was again required to seek medical assistance at the emergency room, for difficulties with her back that occurred when she was forcibly thrown to the ground and tasered. Since that time, she has continued to suffer from and be treated for severe back pain and disability, all of which is of a permanent nature.

14

## COUNT I – NEGLIGENCE OF OSCEOLA MENTAL HEALTH, INC. d/b/a PARK PLACE BEHAVIORAL HEALTH CARE and VIOLATION OF PATIENTS' RIGHTS AS PROVIDED FOR BY FLORIDA STATUTE 394

41. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 40 above.

42. At all times material hereto, Defendant, Park Place directly and vicariously, by and through it's employees, agents, apparent agents, servants, volunteers, directors and owners, including but not limited to, Rehm Evans, Marsha Snyder, R.N., Mary Ellen Kronberg, ARNP and Dr. Barbara Burtner, had a duty, which was non-delegable, to the Plaintiff, Ivette Zayas to provide medical and mental health care and services within the standards of care for similar providers of such medical and mental health services under all of the relevant circumstances in the same or similar medical and mental health community and to protect her rights as provided for in Florida Statute 394.

43. At all times material hereto, the Defendant, Park Place, directly and vicariously, by and through its employees, agents, apparent agents, servants, volunteers, directors and owners, including but not limited to Mr. Evans, Nurse Snyder, Nurse Practitioner Kronberg, and Dr. Burtner, did or failed to do one or more of the following acts, any and all of which were departures from the acceptable, professional

15

standards of care in Osceola County, Florida or any other similar
medical and mental health community and further violated her rights
as provided for by Florida Statutes Chapter 394.

    a. Failed to create, enforce and supervise the enforcement
       of appropriate policies, procedures and guidelines, to
       guide its medical and lay staff when providing medical
       and mental health care and services to patients such as
       Ivette Zayas, to ensure that they would be cared for
       appropriately when presenting with the conditions with
       which Ivette Zayas presented on October 17, 2004,
       including, but not limited to provided appropriate
       medical and mental health services, not violate their
       constitutional rights; not force them to take medication
       against their will, not assault and batter them and not
       create a circumstance where the patient would be
       subjected to the influence of a weapon to subdue them to
       compel compliance to a medication regime which they
       refuse as is their right.

    b. Failed to train its medical and lay staff when providing
       medical and mental health care and services to patients
       such as Ivette Zayas to ensure that they would be cared
       for appropriately, safely, and humanly and with full
       respect for their dignity and integrity when presenting

16

with conditions with which Ivette Zayas presented on
October 17, 2004 including, but not limited to provided
appropriate medical and mental health services, not
violate their constitutional rights; not force them to take
mediation against their will, not assault and batter them
and not create a circumstance where the patient would
be subjected to the influence of a weapon to subdue
them to compel compliance to a medication regime
which they refused.

c.  Failed to follow the guidelines, policies, and procedures
of Park Place, in providing medical care and mental
health services to Ivette Zayas.

d.  Failed to care for Ivette Zayas on October 17, 2004 in a
safe and humane manner with full respect for her dignity
and integrity in that they among other things, violated
her constitutional rights, forced her to take medication
against her will, assaulted and battered her, and created
a circumstance where she would be subject to the
influence of a weapon to subdue her to compel
compliance to a medical regime which she refused.

e.  Failed by and through their employee Mr. Evans,
among others to provide appropriate medical care and
mental health services by among other acts, failed to

17

conduct an appropriate initial assessment; failed to take an appropriate history; failed to review medical records; failed to appropriately communicate the results of the assessment to the on call nurses, physicians and psychologists; failed to request the in person evaluation by a physician and or psychologist; failed to obtain an informed consent to the treatment that was forced upon her ; administered inappropriate treatment; failed to utilize the least restrictive and most appropriate available treatment; inappropriately called for assistance from a police agency when the circumstances did not warrant same; allowed the introduction to the facility of a weapon; assaulted and battered Mrs. Zayas to compel her to take medication against her will; assisted and/or allowed the use of a weapon at Park Place to force Mrs. Zayas to submit and take medication against her will; provided inaccurate information to other healthcare providers and the officers of the Kissimmee police department who responded to Park Place's call, failed to transfer and/or recommend that Mrs. Zayas receive medical assistance from an appropriate facility.

f.  Failed by and through its employees, including, but not limited to Marsha Snyder, R.N., to provide appropriate

and adequate medical and mental health care and services to Ivette Zayas, by among other acts, failed to provide an appropriate nursing evaluation of Ivette Zayas; failed to obtain sufficient information to apprise herself that Ivette Zayas was and/or might be suffering from a medication reaction;  failed to convey to the on call physician, Dr. Burtner relevant information, so that Dr. Burtner could make an appropriate decision; failed to insist and/or recommend that Dr. Burtner come to the premises to evaluate Ms. Zayas; failed to insist and/or recommend that the on all psychologist come to the premises to evaluate Ms. Zayas; failed to recommend and/or refer the transfer of Ms. Zayas to an emergency room in light of the fact that she was possibly suffering from a medication reaction, when there was no physician in the facility who could diagnose such a condition; assaulted and battered Ms. Zayas by giving her medication through injection against her will; assisted, encouraged and allowed the use of a weapon against Ms. Zayas to force her to submit so that she would take medication against her will; and provide inaccurate information to other health care providers and the officers of The Kissimmee Police Department.

19

g. Failed by and through its employee, agent and/or apparent agent, Dr. Barbara Burtner, to provide appropriate medical and psychiatric care and services by among other acts failed to obtain an appropriate history, including but not limited to Ms. Zayas' medications, the changes in those medications and the fact that she believed that she was suffering from a reaction to medication; failed to either evaluate Ms. Zayas personally at the facility and/or refer her, immediately to an emergency room for medical services;  provided an order for inappropriate therapy including an order for injections of medication;  failed to ascertain whether or not Ms. Zayas wished to have injections of medications administered to her; failed to instruct nurse Snyder to telephone her with any change in circumstances so that she could alter her therapy appropriately; failed to obtain Mrs. Zayas' informed consent.

h. Failed to create, enforce and supervise the enforcement of appropriate, policies, procedures and guidelines to insure that weapons would not be used and restraint would only be used in an appropriate fashion, for patient who presented to Park Place as did Ivette Zayas on October 17, 2004.

20

   i. Failed to create, enforce and supervise the enforcement

      of appropriate policies, procedures and guidelines to

      insure that when off premises assistance was required to

      assist with patients such as Ivette Zayas, as she

      presented on October 17, 2004, that appropriate

      resources were sought, as opposed to the police.

   j. Failed to create, enforce and supervise the enforcement

      of appropriate policies, procedures and guidelines to

      insure that tasers not be utilized at Park Place on

      patients such as Ivette Zayas under the conditions with

      which she presented on October 17, 2004.

44. As a direct and proximate result of the foregoing departures from the

    standard of care, Plaintiff, Ivette Zayas suffered physical and mental

    injuries and as a result sustained the following damages all of which

    occurred in the past and will continue indefinitely into the future:

      A.   Personal injury and resulting pain and suffering;

      B.   Disability;

      C.   Disfigurement;

      D.   Mental anguish;

      E.   Loss of the capacity of the enjoyment of life;

      F.   Expenses of hospitalization, medical and nursing

           care and treatment and expenses associated with

her disability and aggravation of the previously existing condition.

WHEREFORE, the Plaintiff, Ivette Zayas, demands judgment for all damages allowed by law and costs against the Defendant, Park Place and demands a trial by jury on all issues so triable by right.

## COUNT II – ASSAULT CLAIM AGAINST PARK PLACE

45. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 40 above.

46. On the evening of October 17, 2004, the employees of Park Place including, but not limited to, Mr. Evans and Nurse Snyder did assault Ivette Zayas by intentionally and unlawfully, offering and threatening corporal injury to her through the use of force under circumstances that created a well-founded fear of imminent peril in Ivette Zayas and a belief in Ivette Zayas that Mr. Evans and Nurse Snyder had the apparent present ability to effectuate the offer and/or threat of injury which was affected in particular as follows:

  a. By insisting that Ivette Zayas accept injections of medications against her will and creating the clear impression that if she did not do so, she would be forced to do so by them, among others.

  b. By stating to Ivette Zayas that if she did not accept the injections of medications against her will, they would force her to do so by among other things, calling the

22

police and creating the clear impression that they would use force on her.

c.  By making it clear through words and actions, to Ivette Zayas, that she could not leave the premises and she would suffer the consequences of force by them, others and/or the police to insure that she submitted to medication by injection, against her will.

d.  By directing and/or allowing the police upon their arrival in the presence of Ivette Zayas to threaten physical force on Ivette Zayas so as to compel her to accept medication by injection against her will.

e.  By allowing and/or creating the circumstance whereby Ivette Zayas was threatened with a weapon by the police to force her to submit and accept medication by injection, against her will.

47. As a direct and proximate result of the foregoing departures from the standard of care, Plaintiff, Ivette Zayas suffered physical and mental injuries and as a result sustained the following damages all of which occurred in the past and will continue indefinitely into the future:

A.  Personal injury and resulting pain and suffering;

B.  Disability;

C.  Disfigurement;

D.  Mental anguish;

    E.     Loss of the capacity of the enjoyment of life;

    F.     Expenses of hospitalization, medical and nursing care and treatment and expenses associated with her disability and aggravation of the previously existing condition.

**WHEREFORE**, the Plaintiff, Ivette Zayas, demands judgment for all damages allowed by law and costs against the Defendant, Rehm Evans and demands a trial by jury on all issues so triable by right.

### COUNT III – BATTERY CLAIM AGAINST PARK PLACE

46. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 40 above.

47. On the evening of October 17, 2004, the employees of Park Place including, but not limited to, Nurse Snyder and Mr. Evans. did commit a battery on Ivette Zayas by intentionally and unlawfully, causing Ivette Zayas to suffer a harmful and offensive contact of her body and without her consent which was affected, in particular as follows:

    a.  By holding Ivette Zayas, against her will for the purpose of unlawfully injecting medication into her body.

    b.  By unlawfully and without her consent, injecting mediation into the body of Ivette Zayas.

48. As a direct and proximate result of the foregoing departures from the standard of care, Plaintiff, Ivette Zayas suffered physical and mental

injuries and as a result sustained the following damages all of which

occurred in the past and will continue indefinitely into the future:

A. Personal injury and resulting pain and suffering;

B. Disability;

C. Disfigurement;

D. Mental anguish;

E. Loss of the capacity of the enjoyment of life;

F. Expenses of hospitalization, medical and nursing
care and treatment and expenses associated with
her disability and aggravation of the previously
existing condition.

**WHEREFORE**, the Plaintiff, Ivette Zayas, demands judgment for all

damages allowed by law and costs against the Defendant, Marsha Snyder, R.N. and

demands a trial by jury on all issues so triable by right.

## COUNT IV-
## FAILURE OF PARK PLACE TO OBTAIN INFORMED CONSENT

49. The plaintiff realleges and incorporates by referencing allegations

contained in paragraphs 1 through 40 above:

50. On the evening of October 17, 2004, Park Place by and through its

employees, agents, apparent agents, contractors, volunteers, officers and

directors did fail to obtain the informed consent of Ivette Zayas provided

for by The Law of Florida including, Florida Statutes Chapter 394 in the

following particulars:

a. Failed to adequately relate the reason for treatment

25

b.     Failed to adequately describe the proposed treatment.

c.     Failed to adequately describe the purpose of the proposed treatment

d.     Failed to adequately describe the alternatives to the proposed treatment.

e.     Failed to adequately advise of the common risks, benefits and side affects of the proposed treatment.

f.     Failed to adequately describe the risks of not accepting the treatment.

g.     Failed to adequately describe in what manner the treatment would be monitored to ensure that her condition did not worsen as a result of the treatment.

h.     Failed to inform Mrs. Zayas that they were inadequately staffed in that no physician was or would be on premises who could handle a medication reaction.

i.     Failed to advise Mrs. Zayas that the appropriate therapy, considering her history, would be to go to a hospital.

j.     Failed to inform her that even if she were to agree to the treatment, that she had the right to revoke that agreement at any time.

26

51. Had Mrs. Zayas been so informed in a calm and professional manner, she would have considered the information provided to her, and elected to go to a hospital where she could have received appropriate care, and this incident would not have escalated to the point where she would have been assaulted, battered tasered, and humiliated.

52. As a direct and proximate result of the foregoing departures from the standards of care, Plaintiff Ivette Zayas suffered physical and medical injuries, and as a result sustained the following damages, all of which occurred in the past and will continue indefinitely into the future.

   a. Personal Injury and resulting pain and suffering.

   b. Disability

   c. Disfigurement

   d. Mental Anguish

   e. Loss of Capacity of the enjoyment of life.

   f. Expenses of hospitalization, medical and nursing care, and treatment and expenses associated with her disability and aggravation of the previously existing condition.

WHEREFORE, the Plaintiff Ivette Zayas, demands judgment for all damages allowed by law and costs against the defendant, Park Place, and a trial by jury of all issues so triable by right.

## COUNT V- NEGLIGENCE OF DR. BARBARA BURTNER IN VIOLATION OF PATIENTS' RIGHTS AS PROVIDED FOR BY FLORIDA STATUTE 394

53. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs one through 40 above.

54. At all times material hereto, Dr. Burtner had a duty, which was non-delegable to the plaintiff, Ivette Zayas, to provide mental and medical healthcare and services within the standards of care for a similar healthcare provider of such medical and mental health services under all of the relevant circumstances in the same or similar medical and mental health community and to protect her rights as provided for in Florida Statutes 394.

55. At all times material hereto, the Defendant Dr. Burtner, failed to do one more of the following acts, any and all of which were departures from the acceptable, professional standards of care in Osceola County, Florida or any other similar medical and mental health community and further violated her right as provided for by Florida Statutes chapter 394:

     a. Failed to follow the guidelines, policies, and procedures of Park Place, while providing medical care and mental health services to Ivette Zayas.

     b. Failed to provide care to Ivette Zayas on October 17, 2004 when answering the on call page in a safe and humane manner with full respect for her dignity and

28

integrity, in that among other things she gave inappropriate orders without sufficient information and without follow up, such that Ivette Zayas' constitutional rights were violated, she was assaulted, battered, and forced to take medication against her will, and subjected to circumstances where a weapon was used against her to compel her compliance to a medical regime which she refused.

c. Failed to provide appropriate medical and mental healthcare services by among other acts; failing to obtain a proper medical history; failing to obtain her medication regime; failing to ascertain whether she was suffering from a medication reaction; failing to ascertain that Ivette Zayas believed that she was suffering from a medication reaction; failing to ascertain whether Ivette Zayas in fact wished to have the injections she was proposing; failing to obtain the informed consent of Ivette Zayas for the injections she was proposing; failing to prescribe appropriate treatment; failing to come to the facility and/or have another physician and/or psychologist come to the facility to evaluate Ms. Zayas; failing to direct the actions of the employees of Park Place such that they

29

did not assault, batter, violate the constitutional right and/or call the police; failed to require that the employees of Park Place phone her back with a follow up as to the circumstances which were developing; failed to arrive at an appropriate diagnosis; failed to provide appropriate therapy; and failed to recommend and/or transfer Ms. Zayas to a local medical facility in light of her current circumstances.

56. As a direct and proximate result of the foregoing departures from the standards of care, Plaintiff Ivette Zayas suffered physical and medical injuries, and as a result sustained the following damages, all of which occurred in the past and will continue indefinitely into the future.

    a. Personal Injury and resulting pain and suffering.

    b. Disability

    c. Disfigurement

    d. Mental Anguish

    e. Loss of Capacity of the enjoyment of life.

    f. Expenses of hospitalization, medical and nursing care, and treatment and expenses associated with her disability and aggravation of the previously existing condition.

**WHEREFORE,** the Plaintiff Ivette Zayas, demands judgment for all damages allowed by law and costs against the defendant, Dr. Burtner and a trial by jury of all issues so triable by right.

## COUNT VI - NEGLIGENCE OF THE CITY OF KISSIMMEE (KISSIMMEE POLICE DEPARTMENT)

57. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 40 above and further allege:

58. At all times material hereto The City of Kissimmee (Kissimmee Police Department) had a duty to Ivette Zayas and in particular on October 17, 2004 to abide by the professional standards of care and conduct for police officers of city police departments when responding to a call for assistance from a facility such as Park Place, regarding a patient such as Ivette Zayas.

59. Notwithstanding the duties owed, The City of Kissimmee (Kissimmee Police Department) failed to abide by the professional standards of care and conduct in responding on October 17, 2004, to a call by Park Place with regard to Ivette Zayas and were therefore negligent as follows:

   a. Failed to provide and/or ensure the enforcement of policies, procedures, and protocols sufficient, such that a response would be in accordance with appropriate professional standards of care and conduct.

   b. Failed to retain and/or ensure the retentions of appropriately trained officers.

   c. Failed to ensure the provision of appropriate training for its police officers with regard to its policies, procedures, protocols, and

responses and/or with regard to the appropriate manner in which to respond to a call such as occurred on October 17, 2004 with Ivette Zayas.

d.  Failed when responding to the call of Park Place to obtain relevant and accurate information regarding Ivette Zayas, her status and condition.

e.  Failed when responding to the call of Park Place to properly evaluate the situation and Ivette Zayas' condition.

f.  Failed when responding to the call of Park Place to recognize that Ivette Zayas was not Baker Acted nor was she an involuntary patient, but rather had come to the facility as a voluntary outpatient, and was well capable of making her own medical decisions.

g.  Failed to allow Ivette Zayas to respond as she wished to the tender of medical injections by the staff of Park Place, in that this was neither in an emergency nor life threatening circumstance, and was capable and competent to make her own medical decisions.

h.  Inappropriately confined Ivette Zayas against her will.

i.  Failed to utilize the least force necessary under the circumstances, but rather utilized excessive force on Ivette Zayas, including, but not limited to, three male officers grabbing her, utilizing painful holding techniques, throwing her to the floor, tasering her on multiple occasions, pulling her pants down, leaving her buttocks

exposed leaving her in a condition where she could no longer assert her will to refuse medical care as was her right, allowing the personnel of Park Place to force medication upon her.

60. As a direct and proximate result of the foregoing departures from the appropriate standards of care and conduct, Ivette Zayas sustained the following damages, all of which occurred in the past and will continue indefinitely into the future:

    a.  Person injury and resulting pain and suffering.

    b.  Disability

    c.  Disfigurement

    d.  Mental Anguish

    e.  Loss of capacity for the enjoyment of life

    f.  Expenses of hospitalization, medical and nursing care and treatment and expenses associated with her disability and aggravation of the previously existing condition.

**WHEREFORE,** the Plaintiff, Ivette Zayas, demands judgment for all damages as allowed by law and costs against the defendant, City of Kissimmee (Kissimmee Police Department) and a trial by jury of all issues so triable by right.

## <u>COUNT VII - ASSAULT AGAINST CITY OF KISSIMMEE</u>
## <u>(KISSIMMEE POLICE DEPARTMENT)</u>

61. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs on through 40 above as fully set forth herein and further states:

62. On or about October 17, 2004 The City of Kissimmee (Kissimmee Police Department) did commit an assault on Ivette Zayas by intentionally and unlawfully offering and threatening corporal injury to her through the use of force under circumstances that created a well founded fear of eminent peril in Ivette Zayas and a belief in Ivette Zayas that the city of Kissimmee (Kissimmee Police Department), had the apparent present ability to effect the offer of injury in the following particulars.

    a.  By making it clear through words and actions to Ivette Zayas, that she could not leave the small room and would suffer physical consequences enforced by the three male officers if she attempted to do so.

    b.  By insisting that Ivette Zayas accept injections and medications against her will and creating the clear impression that if she did not do so, she would be physically forced to do so by the three male police officers present.

    c.  By stating to Ivette Zayas that if she did not accept the injections and medication against her will, the three male police officers

34

present would physically force her to do so, by among other things, utilizing their physical strength and the weapons at their disposal.

    d.  Threatening Ivette Zayas with physical force including the physical strength of three male police officers and taser weapons.

63. As a direct and proximate result of the foregoing departures from the standards of care, the plaintiff Ivette Zayas suffered physical and mental injuries and as a result, sustained the following damages all of which occurred in the past and will continue indefinitely into the future:

    a.  . Personal injury and resulting pain and suffering.

    b.  Disability

    c.  Disfigurement

    d.  Mental Anguish

    e.  Loss of capacity for the enjoyment of life

    f.  Expenses of hospitalization, medical and nursing care and treatment and expenses associated with her disability and aggravation of the previously existing condition.

WHEREFORE, the Plaintiff, Ivette Zayas, demands judgment for all damages as allowed by law and costs against the defendant, City of Kissimmee (Kissimmee Police Department) in a trial by jury of all issues so triable by right.

## COUNT VIII
## BATTERY CLAIM AGAINST THE CITY OF KISSIMMEE
## (KISSIMMEE POLICE DEPARTMENT)

64. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 40 above:

65. On or about the evening of October 17, 2004 The City of Kissimmee (Kissimmee Police Department) did commit a battery on Ivette Zayas by intentionally and unlawfully causing Ivette Zayas to suffer a harmful and offensive contact of her body without her consent which was effected in particular as follows:

    a.  Utilizing the physical strength of three male police officers to hold her against her will for the purpose of unlawfully injecting medication into her body.

    b.  Utilizing forceful and painful holding and locking techniques to restrain Ivette Zayas.

    c.  Throwing Ivette Zayas to the floor and holding her in that position.

    d.  Discharging a taser against the body of Ivette Zayas on multiple occasions.

    e.  Pulling down her pants and exposing her buttocks.

66. As a direct and proximate result of the foregoing departures from the standards of care, plaintiff Ivette Zayas suffered physical and mental

injuries and as a result sustained the following damages all of which
occurred in the past and will continue indefinitely into the future:

    a.  Personal injury and resulting pain and suffering.

    b.  Disability

    c.  Disfigurement

    d.  Mental Anguish

    e.  Loss of capacity for the enjoyment of life

    f.  Expenses of hospitalization, medical and nursing care and
treatment and expenses associated with her disability and
aggravation of the previously existing condition.

    **WHEREFORE,** the Plaintiff, Ivette Zayas, demands judgment for all
damages as allowed by law and costs against the defendant, City of Kissimmee
(Kissimmee Police Department) in a trial by jury of all issues so triable by right.

**COUNT IX**
**VIOLATION OF CIVIL RIGHTS.42 UNITED STATES CODES 1983**
**BY THE CITY OF KISSIMMEE (KISSIMMEE POLICE DEPARTMENT)**

67. Plaintiff realleges and incorporates by reference paragraphs 1 through 40
above and further states:

68. At all times material hereto The defendant, City of Kissimmee
(Kissimmee Police Department) had or should have had notice of Ivette
Zayas' correct status as a voluntary outpatient, the fact that this was not in
a life threatening circumstance, nor an emergency the fact that she was
fully competent to make her own medical decisions and that she did have

the right to make her own determination as to whether she was to accept

medical care.

69. Defendants, City of Kissimmee, (Kissimmee Police Department) while

acting under the color of state law and by virtue of the authority vested in

them, and/or its agents violated Ivette Zayas' constitutional rights in the

following particulars:

    a.  Forcing Ivette Zayas to remain confined in a small enclosed room.

    b.  Assaulting Ivette Zayas by the threat of physical harm, if she would

       not subject to injection against her will.

    c.  Battering Ivette Zayas through the use of three male officers,

       utilizing their physical strength, painful holding and locking

       techniques, and tasers.

    d.  Utilizing excessive force, including the use of three male officers to

       exercise their physical strength to hold her, utilizing painful

       holding and locking techniques, throwing her to the floor, holding

       her on the floor, tasering her multiple times, and removing her

       pants thus exposing her buttocks, which was done to allow the

       administration of injections against her will, and against the rights

       afforded her by the constitution.

    e.  Writing, enforcing, and/or tolerating a custom and policy

       condoning and permitting the activities set out in subsection A and

       D above

70. Defendants, City of Kissimmee, (Kissimmee Police Department), through their actions as described above, caused Ivette Zayas to be subjected to the deprivation of her rights, privileges, and immunities as secured by the constitution and the Laws of The United States including:

    a. The right to liberty as protected by the 14th amendment.

    b. The right to substantive and procedural due process as protected by the 14th amendment.

    c. The right to be secure in her person and a right to privacy as protected by the 4th and 14th amendment.

    d. The right to be free from unlawful detention as secured by the 4th and 14th amendments.

71. Defendant, City of Kissimmee (Kissimmee Police Department had actual and/or constructive knowledge of the unlawful customs, policies, and practices as set forth above and at all times had the power and authority to establish and enforce appropriate policies, procedures, supervision, and training to prohibit such unlawful conduct, however they failed to do so. The defendants, City of Kissimmee (Kissimmee Police Department) actions were reckless and/or deliberate and/or malicious such that they constituted a wanton, willful and deliberate indifference to Ivette Zayas' fundamental and clearly established constitutional rights.

72. As a direct, proximate, and foreseeable result of the constitutional violations and intention misconduct of the defendant as set forth above, Ivette Zayas has suffered, and continues to suffer the following injuries:

39

a.   Personal injury and resulting pain and suffering.

b.   Disability

c.   Disfigurement

d.   Mental Anguish

e.   Loss of capacity for the enjoyment of life

f.   Expenses of hospitalization, medical and nursing care and treatment and expenses associated with her disability and aggravation of the previously existing condition.

73. Plaintiff, Ivette Zayas has retained the undersigned attorney to prosecute this action and is obligated to pay them a reasonable fee for their services

74. Plaintiff Ivette Zayas is entitled to attorney's fees in accordance with 42 United States Code Sections 1983 and 1985

**WHEREFORE,** the Plaintiff, Ivette Zayas, demands judgment for all damages as allowed by law and costs, attorney's fees, and such other relief's as the court deems just against the defendant, City of Kissimmee (Kissimmee Police Department) and further demands a trial by jury of all claims so triable by right.

## COUNT X
## VIOLATION OF CIVIL RIGHTS 42 UNITED STATES CODE 1983
## BY: OFFICER ANTHONY

75. Plaintiff realleges and incorporates by reference paragraphs 1 through 40

above:

76. This is an action for violation of Constitutional Rights brought under 42

United States Code Section 1983.

77. At all times material hereto, Officer Anthony, while acting under the color

of state law and by virtue of the authority vested in him, violated Ivette

Zayas' constitutional rights in the following particulars:

   a. Forcing Ivette Zayas to remain in a small enclosed room, thus

   depriving her of her liberty.

   b. Assaulting Ivette Zayas by threatening physical harm to her if she

   did not subject herself to injections against her will.

   c. Battering Ivette Zayas by using painful holding and locking

   techniques, throwing her to the floor, holding her on the floor,

   tasering her multiple times and pulling down her pants.

   d. Failing to utilize the least force necessary.

   e. Utilizing excessive force including joining together with two other

   male officers to apply painful holding and locking techniques,

   holding her on the floor, tasering her multiple times, removing her

   pants, and exposing her buttocks, all of which was to allow the

administration of injections against her will and against the clearly

established rights afforded to her by the Constitution.

    f.  Failing to abide by the customs, policies, and procedures of The

Kissimmee Police Department, by acting as set out above.

78. At all times material hereto Officer Anthony had actual and/or

constructive knowledge and/or should have had active notice of Ivette

Zayas' correct status as a voluntary out-patient. The fact that this was not

a life saving circumstance, nor an emergency, the fact that she was fully

competent to make her own medical decisions, and that she did have the

clearly established right to make her own determination as to whether she

was to accept medical care.

79. The actions of Officer Anthony as described above, were reckless and/or

deliberate and/or malicious such that the constituted a wanton, willful

and deliberate indifference to Ivette Zayas' fundamental and clearly

established Constitutional Rights.

80. At all times material hereto, Officer Anthony, through his actions

described above, caused Ivette Zayas to be subjected to the deprivation of

her clearly established rights, privileges, and immunities, as secured by the

constitution and the laws of the United States including:

    a.  The right to liberty as protected by the 14th Amendment.

    b.  The right and substantive and procedural due process as protected

by The 14th Amendment.

42

    c.  The right to be secure in her person and the right to privacy as protected by the 4th and 14th Amendments.

    d.  The right to be free from unlawful detention as secured by the 4th and 14th Amendments.

81. As a direct, proximate, and foreseeable result of the constitutional violations and intentional misconduct of the defendant as set forth above, Ivette Zayas has suffered, and continues to suffer the following injuries:

    a.  Personal injury and resulting pain and suffering.

    b.  Disability

    c.  Disfigurement

    d.  Mental Anguish

    e.  Loss of capacity for the enjoyment of life

    f.  Expenses of hospitalization, medical and nursing care and treatment and expenses associated with her disability and aggravation of the previously existing condition.

82. Plaintiff Ivette Zayas has retained the undersigned attorney to prosecute this action and is obligated to pay a reasonable fee for their services.

83. Plaintiff Ivette Zayas is entitled to attorney's fees pursuant to 42 United States code sections 1983 and 1985.

**WHEREFORE,** the Plaintiff, Ivette Zayas, demands judgment for all damages as allowed by law and costs, attorney's fees, and such other relief's as the court deems just against the defendant, Officer Anthony, and further demands a trial by jury of all claims so triable by right.

<u>**COUNT XI**</u>
<u>**VIOLATION OF CIVIL RIGHTS 42 UNITED STATES CODE 1983**</u>
<u>**BY: OFFICER PEDULLA**</u>

84. Plaintiff realleges and incorporates by reference paragraphs 1 through 40

above and further alleges:

85. This is an action for violation of Constitutional Rights brought under 42

United States Code Section 1983.

86. At all times material hereto, Officer Pedulla, while acting under the color

of state law and by virtue of the authority vested in him, violated Ivette

Zayas' constitutional rights in the following particulars:

   a. Forcing Ivette Zayas to remain in a small enclosed room, thus

   depriving her of her liberty.

   b. Assaulting Ivette Zayas by threatening physical harm to her if she

   did not subject herself to injections against her will.

   c. Battering Ivette Zayas by using painful holding and locking

   techniques, throwing her to the floor, holding her on the floor,

   tasering her multiple times and pulling down her pants.

   d. Failing to utilize the least force necessary.

   e. Utilizing excessive force including joining together with two other

   male officers to apply painful holding and locking techniques,

   holding her on the floor, tasering her multiple times, removing her

   pants, and exposing her buttocks, all of which was to allow the

administration of injections against her will and against the clearly established rights afforded to her by the Constitution.

    f.  Failing to abide by the customs, policies, and procedures of The Kissimmee Police Department, by acting as set out above.

87. At all times material hereto Officer Pedulla had actual and/or constructive knowledge and/or should have had active notice of Ivette Zayas' correct status as a voluntary out-patient. The fact that this was not a life saving circumstance, nor an emergency, the fact that she was fully competent to make her own medical decisions, and that she did have the clearly established right to make her own determination as to whether she was to accept medical care.

88. The actions of Officer Pedulla as described above were reckless and/or deliberate and/or malicious such that they constituted a wanton, willful and deliberate indifference to Ivette Zayas' fundamental and clearly established Constitutional Rights.

89. At all times material hereto, Officer Pedulla, through his actions described above, caused Ivette Zayas to be subjected to the deprivation of her clearly established rights, privileges, and immunities, as secured by the constitution and the laws of the United States including:

    a.  The right to liberty as protected by the 14th Amendment.

    b.  The right and substantive and procedural due process as protected by the 14th Amendment.

    c.  The right to be secure in her person and the right to privacy as

        protected by the 4th and 14th Amendments.

    d.  The right to be free from unlawful detention as secured by the 4th

        and 14th Amendments.

90. As a direct, proximate, and foreseeable result of the constitutional

violations and intentional misconduct of the defendant as set forth above,

Ivette Zayas has suffered, and continues to suffer the following injuries:

    a.  Personal injury and resulting pain and suffering.

    b.  Disability

    c.  Disfigurement

    d.  Mental Anguish

    e.  Loss of capacity for the enjoyment of life

    f.  Expenses of hospitalization, medical and nursing care and

       treatment and expenses associated with her disability and

       aggravation of the previously existing condition.

91. Plaintiff Ivette Zayas has retained the undersigned attorney to prosecute

this action and is obligated to pay a reasonable fee for their services.

92. Plaintiff Ivette Zayas is entitled to attorney's fees pursuant to 42 United

States code sections 1983 and 1985.

**WHEREFORE,** the Plaintiff, Ivette Zayas, demands judgment for all

damages as allowed by law and costs, attorney's fees, and such other relief's as the

court deems just against the defendant, Officer Pedulla, and further demands a trial

by jury of all claims so triable by right.

46

## COUNT XII
## VIOLATION OF CIVIL RIGHTS 42 UNITED STATES CODE 1983
## BY: OFFICER GAVLICK

93. Plaintiff realleges and incorporates by reference paragraphs 1 through 40 above and further alleges:

94. This is an action for violation of Constitutional Rights brought under 42 United States Code Section 1983.

95. At all times material hereto, Officer Gavlick, while acting under the color of state law and by virtue of the authority vested in him, violated Ivette Zayas' constitutional rights in the following particulars:

    a. Forcing Ivette Zayas to remain in a small enclosed room, thus depriving her of her liberty.

    b. Assaulting Ivette Zayas by threatening physical harm to her if she did not subject herself to injections against her will.

    c. Battering Ivette Zayas by using painful holding and locking techniques, throwing her to the floor, holding her on the floor, tasering her multiple times and pulling down her pants.

    d. Failing to utilize the least force necessary.

    e. Utilizing excessive force including joining together with two other male officers to apply painful holding and locking techniques, holding her on the floor, tasering her multiple times, removing her pants, and exposing her buttocks, all of which was to allow the administration of injections against her will and against the clearly established rights afforded to her by the Constitution.

47

      f.  Failing to abide by the customs, policies, and procedures of The

          Kissimmee Police Department, by acting as set out above.

96. At all times material hereto Officer Gavlick had actual and/or

    constructive knowledge and/or should have had active notice of Ivette

    Zayas' correct status as a voluntary out-patient. The fact that this was not

    a life saving circumstance, nor an emergency, the fact that she was fully

    competent to make her own medical decisions, and that she did have the

    clearly established right to make her own determination as to whether she

    was to accept medical care.

97. The actions of Officer Pedulla as described above were reckless and/or

    deliberate and/or malicious such that they constituted a wanton, willful

    and deliberate indifference to Ivette Zayas' fundamental and clearly

    established Constitutional Rights.

100. At all times material hereto, Officer Gavlick, through his actions

    described above, caused Ivette Zayas to be subjected to the deprivation of

    her clearly established rights, privileges, and immunities, as secured by the

    constitution and the laws of the United States including:

      a.  The right to liberty as protected by the 14th Amendment.

      b.  The right to substantive and procedural due process as protected by

          The 14th Amendment.

      c.  The right to be secure in her person and the right to privacy as

          protected by the 4th and 14th Amendments.

    d.  The right to be free from unlawful detention as secured by the 4th and 14th Amendments.

98. As a direct, proximate, and foreseeable result of the constitutional violations and intentional misconduct of the defendant as set forth above, Ivette Zayas has suffered, and continues to suffer the following injuries:

    a.   Personal injury and resulting pain and suffering.

    b.  Disability

    c.  Disfigurement

    d.  Mental Anguish

    e.  Loss of capacity for the enjoyment of life

    f.  Expenses of hospitalization, medical and nursing care and treatment and expenses associated with her disability and aggravation of the previously existing condition.

99. Plaintiff Ivette Zayas has retained the undersigned attorney to prosecute this action and is obligated to pay a reasonable fee for their services.

100.   Plaintiff Ivette Zayas is entitled to attorney's fees pursuant to 42 United States code sections 1983 and 1985.

**WHEREFORE,** the Plaintiff, Ivette Zayas, demands judgment for all damages as allowed by law and costs, attorney's fees, and such other relief's as the court deems just against the defendant, Officer Gavlick, and further demands a trial by jury of all claims so triable by right.

## COUNT XIII
## CONSPIRACY TO VIOLATE CIVIL RIGHTS AGAINST CITY OF KISSIMMEE (KISSIMMEE POLICE DEPARTMENT) OFFICERS: ANTHONY, PEDULLA, AND GAVLICK IN VIOLATION OF 42 UNITED STATES CODE   SECTION 1985

101.    Plaintiff realleges and incorporates by reference paragraphs 1 through 40 and further states:

102.    This is an action for conspiracy to violate Constitutional rights brought under 42 United States code, section 1985.

103.    Defendants, City of Kissimmee (Kissimmee Police Department), and Officers Anthony, Pedulla, and Gavlick by their joint actions and their agreement expressed or implied acted to violate Ivette Zayas' rights by falsely, intentionally, and maliciously depriving her of her freedom, applying excessive force to her, and compelling her to take medication against her will and conspired together to violate Ivette Zayas' rights, in violation of 42 United States code section 1985.

104.    As a direct and proximate result of the foregoing departures from the standards of care, Plaintiff Ivette Zayas suffered physical and medical injuries, and as a result sustained the following damages, all of which occurred in the past and will continue indefinitely into the future.

   a.  Personal Injury and resulting pain and suffering.

   b.  Disability

   c.  Disfigurement

   d.  Mental Anguish

50

e.  Loss of Capacity of the enjoyment of life.

f.  Expenses of hospitalization, medical and nursing

care, and treatment and expenses associated with her

disability and aggravation of the previously existing

condition.

105.  Plaintiff Ivette Zayas has retained the undersigned attorney to

prosecute this action and is obligated to pay a reasonable fee for their

services.

106.  Plaintiff Ivette Zayas is entitled to attorney's fees pursuant to 42

United States code sections 1983 and 1985.

**WHEREFORE,** the Plaintiff Ivette Zayas, demands judgment for all

damages allowed by law and costs and attorneys fees against the defendants, and a

trial by jury of all issues so triable by right.

## CERTIFICATE OF COUNSEL

The undersigned hereby certifies that a reasonable investigation has taken

place, which has given rise to a good faith belief that grounds exist for an action

against the named Defendants for medical negligence.

JOSEPH M. TARASKA, ESQUIRE
Florida Bar No.: 235571
JACOBS & GOODMAN, P.A.
890 S.R. 434, North
Altamonte Springs, Florida 32714
(407) 788-2949
(407) 788-1378 FAX
Attorneys for Plaintiff