# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IVETTE ZAYAS,

               Plaintiff,

-vs-                                              Case No.  6:07-cv-1779-Orl-31KRS

OSCEOLA MENTAL HEALTH INC. d/b/a
PARK PLACE BEHAVIORAL
HEALTHCARE, DR. BARBARA
BURTNER, CITY OF KISSIMMEE,
KISSIMMEE POLICE DEPARTMENT,
OFFICER RANDY S. ANTHONY,
OFFICER VINCENT A. PEDULLA and
OFFICER PETER GAVLICK,

               Defendants.

_____

# ORDER

      This matter comes before the Court on a Motion to Dismiss (Doc. 7) filed by Defendant

City of Kissimmee ("the City").[1]

## I. Background[2]

      Plaintiff Ivette Zayas ("Zayas"), who has been diagnosed with bipolar disorder and

depression, was receiving outpatient care at Park Place, a mental health facility in Kissimmee, FL

which provides both inpatient and outpatient care, beginning in 2001. On or about October 8,

2004, Nurse Practitioner Kronberg ("Kronberg") significantly increased Zayas' dosage of the

_____

[1]Plaintiff has failed to file a timely response.

[2]The following statement of material facts is taken from Plaintiff's Amended Complaint (Doc.
2).

medication Seroquel[3]. Kronberg instructed Zayas that if she experienced any side effects or negative reaction to the new dosage, she should return to Park Place immediately – any time day or night – and the staff would contact Kronberg.

On the evening of October 17, 2004, Zayas began experiencing tremors, shaking and an uncomfortable feeling shortly after taking Seroquel. Believing that these were negative reactions to the new dosage, Zayas had a friend take her to Park Place. When she arrived she was greeted by an assessor named Rehm Evans ("Evans"), whom she had not met before. Zayas told Evans that she believed she was having a reaction to her medication and wanted to speak with a physician.

Evans told Zayas to wait in a small room while he went to call the on-call psychiatrist, Dr. Barbara Burtner ("Burtner"). Burtner did not have a working relationship with Zayas and did not examine or interview her that evening. However, after speaking with Evans, Burtner prescribed medication to be given to Zayas by injection. Zayas was then approached by Nurse Snyder, who insisted that Zayas receive the injection, despite Zayas' objections. Snyder and Evans blocked Zayas from leaving Park Place and told her that if she did not submit to the injection, they would force her compliance. Zayas again refused, and Snyder and Evans threatened to call the police. Zayas continued to refuse the injection and Evans called 911 and asked that police officers be sent to Park Place.

---

[3]Seroquel is the brand name for the anti-psychotic drug Quetiapine, which works by helping to restore the balance of certain natural chemicals (neurotransmitters) in the brain, and is used to treat, *inter alia*, bipolar disorder. *See* http://www.webmd.com/drugs/drug-4718-Seroquel.aspx?drugid=4718&drugname=Seroquel (last visited Dec. 5, 2007).

Three officers from the Kissimmee Police Department ("KPD") arrived at the facility.[4] Zayas informed the Officers that she did not want to take the medication that was being forced upon her. Rather, she wished to simply leave the facility with her friend. At no time was Zayas violent or out of control. The Officers insisted that Zayas receive the injections. Zayas then began to cry and told the Officers that she was afraid that additional medications may exacerbate her reaction to the Seroquel. The Officers forcibly grabbed Zayas using arm locks and other painful maneuvers to hold her on the floor. Officer Randy Anthony used a Taser several times on Zayas to control her and keep her on the floor. While holding Zayas on the floor, the Officers removed her pants and allowed Snyder to give her two injections in her buttocks.

After this incident, a female officer arrived at Park Place and instructed the Officers to leave the scene. At this point, Park Place arranged for Zayas, who was complaining of chest pains, to be transported to the emergency room at Florida Hospital Kissimmee.

## II. Standard of Review

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Plaintiff must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Bell Atlantic Corp. v. Twombly,* 550 U.S. __, 127 S. Ct.

---

[4]These were Officers Randy Anthony, Vincent Pedulla and Peter Gavlick, referred to collectively hereinafter as "the Officers".

1955, 1965 (2007). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual

deductions or legal conclusions masquerading as facts will not

prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure

("Rule") 12(b)(6), the rule to be applied is that, "courts must be mindful that the Federal Rules

require only that the complaint contain 'a short and plain statement of the claim showing that the

pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003)

(*citing* FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a

plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.*

*for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). Instead, the complaint need only "contain

either direct or inferential allegations respecting all the material elements necessary to sustain a

recovery under some viable legal theory." *Id*. (internal citation and quotation omitted). "A

complaint need not specify in detail the precise theory giving rise to recovery. All that is required

is that the defendant be on notice as to the claim being asserted against him and the grounds on

which it rests." *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384

(11th Cir. 1989).

## III. Legal Analysis

### A. Service of Process

First, the City argues that service of process was not effected in a timely manner. However,

because service of process has now been effected, dismissal of the entire action without prejudice

would only result in a waste of time and judicial resources. Therefore, the Court will not dismiss

the complaint for failure to serve process.

**B. Proper Parties In Interest**

Next, Defendant argues that it is improper for both the City and KPD to be named

defendants. The Eleventh Circuit has held that police departments are not usually considered legal

entities subject to suit. *Dean v. Barber,* 951 F.2d 1210, 1214 (11th Cir. 1992).  In each case, the

"capacity to sue or be sued shall be determined by the law of the state in which the district court is

held." *Id.*

In Florida, a city is the proper party in interest, not its police department. *Post v. City of*

*Fort Lauderdale,* 750 F.Supp.1132 (S.D. Fla.1990).  "Where a police department is an integral

part of the city government as the vehicle through which the city government fulfills its policing

functions, it is not an entity subject to suit." *Id.*  (internal citations omitted).

Here, the City is already named as a defendant, and because KPD is not a legal entity

separate and apart from the city, the action against KPD will be dismissed.

**C. The 14th Amendment**

In Counts IX through XII, Plaintiff seeks relief under 42 U.S.C. § 1983 for violations of her

14th and 4th Amendment rights. Specifically, Plaintiff alleges that she was subjected to excessive

force by the City and/or its officers. The City correctly asserts that the Fourteenth Amendment

does not apply to the Plaintiff's claims related to excessive force, which are instead governed by

the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Plaintiff also alleges claims

for procedural and substantive due process violations. However, Plaintiff's factual allegations do

not support these claims. Therefore, all claims alleging violations of the 14th Amendment will be

dismissed for failure to state a claim.

-5-

### D. Negligence Claims

Finally, the City argues that Count VI, which alleges negligence, should be dismissed due to sovereign immunity.

> The State of Florida and its subsidiaries – including municipalities – are generally immune from tort liability, *see* Fla. Const., Art. X, § 13, however, Florida has waived this immunity "under circumstances in which the state or agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state." Fla. Stat. § 768.28(1). At the same time, even if the claim contain[s] sufficient allegations of tort liability under which a private person would be liable, the waiver of sovereign immunity would still not apply if the challenged acts of the state agent were "discretionary" governmental acts rather than merely "operational" ones.

*Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001).

> An act is "discretionary" when all of the following conditions have been met: (1) the action involves a basic governmental policy, program, or objective; (2) the action is essential to the realization or accomplishment of that policy, program, or objective; (3) the action requires the exercise of basic policy evaluations, judgments, and expertise on the part of the governmental agency involved; and (4) the governmental agency involved possesses the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision. *Trianon Park*, 468 So. 2d at 918 (internal quotations omitted); *see also Kaisner*, 543 So. 2d at 737.

*Lewis*, 260 F.3d at 1264.

In paragraphs 59(a) through (c) of the Amended Complaint, Plaintiff alleges negligent policymaking, retention of officers and training. (Doc. 2 at 31). In *Lewis*, the Eleventh Circuit explicitly held that training of law enforcement officers is a discretionary function which is entitled to sovereign immunity under Florida Law. *Id*. at 1266. Policymaking and retention of officers are also discretionary functions for which the City is entitled to sovereign immunity.

In paragraph 59(i), Plaintiff alleges negligent use of excessive force. (Doc. 2 at 32). However, Florida law does not recognize a cause of action for excessive force. *See City of Miami v. Sanders*, 672 So. 2d 46, 47-8 (Fla. 3d DCA 1996) ("it is not possible to have a cause of action

-6-

for 'negligent' use of excessive force because there is no such thing as the 'negligent' commission of an 'intentional' tort").

Plaintiff also alleges, in paragraphs 59(d) through (h) that the officers were negligent in the handling of her detention, because they did not obtain adequate information about the situation. (Doc. 2 at 32). Defendant makes no argument that sovereign immunity applies to these actions. Furthermore, this Court finds that the actions of the Officers on the night in question were not the type of discretionary, policy making functions that are protected by sovereign immunity. *See Kaisner v. Kolb*, 543 So. 2d 732 (Fla. 1989). Therefore, Count VI will not be dismissed in its entirety.

## IV. Conclusion

Accordingly, it is

**ORDERED** that the Motion to Dismiss (Doc. 7) is **GRANTED**. The Kissimmee Police Department is hereby **DISMISSED** from this case. Furthermore, Count VI is **DISMISSED** insofar as it alleges negligent policymaking, training, retention and/or excessive force. Finally, Counts IX through XII are **DISMISSED** insofar as they seek relief for violations of the 14th Amendment.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 5, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party